**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

---

ALEJANDRO FELIPE-HERNANDEZ,

Petitioner,

v. No. 1:26-cv-03146-MLG-KRS

WARDEN, Torrance County Processing Center; et al,

Respondents.

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS AND ORDERING PETITIONER'S IMMEDIATE RELEASE**

This matter is before the Court on Petitioner Alejandro Felipe-Hernandez's Petition for Writ of Habeas Corpus Pursuant to U.S.C. § 2241. Doc 1. Felipe-Hernandez, a citizen of Cuba, is being detained at the Torrance County Processing Center in Estancia, New Mexico ("Torrance"). Doc. 1-1 at 5. Felipe-Hernandez entered the United States on September 27, 2022. Doc. 1-1 at 5. He was detained by Border Patrol two days later, issued a Notice to Appear, and released on his own recognizance in accordance with 8 C.F.R. § 236. Doc 1-1 at 72.

On July 26, 2025, Felipe Hernandez was detained in Florida by Immigration and Customs Enforcement ("ICE") officials as part of "operation tidal wave" which was "aimed at detecting Immigration violators." Doc. 6-1 at 2. The government does not assert that there was a change in circumstances requiring a redetermination of custody or revocation of his parole. *See generally* Doc. 6. Without being given a redetermination hearing, Felipe Hernandez was then transferred to a detention facility in El Paso, and then to Torrance. Doc. 9 at 2-3.

On January 7, 2026, after five months of detention without a redetermination hearing, Felipe-Hernandez was ordered removed to Ecuador. Doc. 6-3. On the same day, an Immigration Judge ("IJ") pretermitted Felipe-Hernandez's application for asylum, finding that he "does not

have genuine fear of persecution or torture in Ecuador."[1] Doc. 6-4 at 1. Two weeks later, Felipe-Hernandez was moved to a detention facility in Buffalo, New York. Doc. 9 at 3. While detained in Buffalo, Felipe Hernandez appealed the IJ's Removal Order. Doc. 9 at 2. His appeal has not been decided and his removal order is not yet final. Doc. 9 at 2.

On June 3, 2026, after ten months of detention, Felipe-Hernandez received a bond hearing.[2] Doc. 6-6 at 1. The request for a bond was denied. *Id.* The IJ determined that Felipe-Hernandez was a flight risk because he "has a final order of removal." *Id.*

Between August 22 and September 1, 2026, Felipe Hernandez was transferred to two other facilities before arriving at Torrance again. Doc. 9 at 3. Due to these transfers, Felipe-Hernandez found it difficult to maintain communication with his attorney, and when he petitioned this Court for a writ of habeas corpus, he did so pro se. Doc. 1 at 6. His petition argues that his prolonged detention is a violation of his right to due process. Doc. 1 at 6. The Court agrees.

Felipe-Hernandez was released on his own recognizance[3] on September 29, 2022, which necessarily involved a factual determination that he was neither a flight risk nor a danger to the community. *See* Doc. 1-1 at 72 (releasing Petitioner "in accordance with section 236 of the Immigration and Nationality Act"). *See also* 8 C.F.R. § 236.1(c)(8) (explaining that a noncitizen may be released if they "demonstrate to the satisfaction of the officer that such release would not

---

[1] This had the effect of pretermitting Felipe-Hernandez's claim for asylum from Cuba, based on an insufficient fear of Ecuador. *See* Doc. 1-1 at 8.

[2] Felipe-Hernandez had a bond hearing scheduled for April, eight months after his detention began, but it was vacated after he withdrew his request. Doc. 6-5 at 1.

[3] Release on recognizance is a form of conditional parole authorized by § 1226(a)(2)(B). See *Ortega-Cervantes v. Gonzales*, 501 F.3d 1111, 1115 (9th Cir. 2007) (explaining that the federal government "use[s] the phrase 'release on recognizance' as another name for 'conditional parole' under § 1226(a)"); *Gomes v. Hyde*, 804 F. Supp. 3d 265, 269 (D. Mass. 2025) ("[T]he government may release a noncitizen detained under Section 1226(a) on an Order of Recognizance, which is a form of conditional parole").

pose a danger to property or persons, and that the [noncitizen] is likely to appear for any future proceeding”). Felipe-Hernandez asserts that he complied with all conditions of his release, and that no change in circumstances warranted revocation of his parole. Doc. 1 at 6-7. Despite this, he was re-detained without notice or a pre-deprivation hearing. *See* Doc. 6-1. He argues that his re-detention violated his right to due process. Doc. 1 at 6-7. Federal Respondents do not dispute that Felipe-Hernandez did not receive a pre-deprivation hearing, nor do they argue that his parole was ever formally revoked. *See generally* Doc. 6. They also do not assert that conditions material to Felipe-Hernandez’s parole changed prior to his re-detention. *Id.*

Noncitizens released from immigration custody have a liberty interest in remaining free. *See, e.g.*, *Pablo Sequen v. Albarran*, 806 F. Supp. 3d 1069, 1082 (N.D. Cal. 2025) (“Even when the government has discretion to detain an individual, its subsequent decision to release the individual creates ‘an implicit promise’ that [they] will be re-detained only if [they] violate[] the conditions of [their] release.”) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)), *appeal filed sub nom.*, *Garcia v. Albarran*, No. 25-7868 (9th Cir. Dec. 16, 2025). This Court has already addressed what process is “necessary to ensure any deprivations of that protected liberty interest accords with the Constitution.” *Diallo v. Orozco*, No. 2:26-cv-00066-MLG-JHR, 2026 WL 608746, at *3 (D.N.M. Mar. 4, 2026) (internal quotation marks omitted) (quoting *Garcia Domingo v. Castro*, 806 F. Supp. 3d 1246, 1252 (D.N.M. 2025)). The *Mathews v. Eldridge*[4] balancing test guides this analysis. *See Diallo*, 2026 WL 608746, at *3-4. As in *Diallo*, the Court concludes that due process demands that Felipe-Hernandez receive a pre-deprivation hearing because (1) Felipe-Hernandez has a clear liberty interest in remaining out of custody; (2) the risk of erroneous deprivation under the procedures used here is high, and the probable value of additional procedural

[4] 424 U.S. 319, 335 (1976).

safeguards is considerable, given that Felipe-Hernandez was re-detained long before federal Respondents presented any valid legal basis to justify his civil detention; and (3) federal Respondents' interest in detaining Felipe-Hernandez is low because they previously determined that he is neither a flight risk nor a danger to the community, and the cost of a pre-deprivation hearing is minimal. *See id.; see also Pablo Sequen*, 806 F. Supp. 3d at 1082-90.

Of course, Felipe-Hernandez did receive a post-deprivation bond hearing approximately ten months after being re-detained. Doc. 6-6 at 1. Although there are circumstances in which "a meaningful post-deprivation hearing is adequate[,]" to satisfy due process, federal Respondents have not argued that this case presents such a situation. *See, e.g.*, *Clark v. City of Draper*, 168 F.3d 1185, 1189 (10th Cir. 1999) ("Although normally a property owner is entitled to a pre-deprivation hearing, where, as in this case, the state must act quickly, a meaningful post-deprivation hearing is adequate."). Absent any argument from federal Respondents that a post-deprivation hearing would provide adequate process, the Court is unable to conclude that the post-deprivation bond hearing remedied the due process violation that occurred when Felipe-Hernandez was re-detained in July 2025 without any process and then held without a redetermination hearing for 10 months. *See* Doc. 6-1; Doc. 6-6. "Such a hearing is no substitute for the requirement that ICE engage in a deliberative process prior to, or contemporaneous with, the initial decision to strip a person of the freedom that lies at the heart of the Due Process Clause." *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 497 (S.D.N.Y. 2025) (citation modified) (ordering a petitioner's release after concluding that a post-deprivation bond hearing would be "inadequate to address the denial of due process that [the petitioner] was entitled to in the first instance"); *see also Rodriguez-Acurio v. Almodovar*, No. 2:25-CV-6065 (NJC), 2025 WL 3314420, at *31 (E.D.N.Y. Nov. 28, 2025) ("[A] post-deprivation bond hearing before a DHS officer or even an immigration judge would provide no genuine

opportunity to relief because the detention without adequate pre-deprivation procedures has already been carried out.”).

Accordingly, because Felipe-Hernandez did not receive a pre-deprivation hearing, *see* Doc. 6-1, his detention is an ongoing violation of his right to due process. *See Reno v. Flores*, 507 U.S. 292, 306 (1993) (“It is well established that the Fifth Amendment entitles [noncitizens] to due process of law in deportation proceedings.”); *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) (“[O]nce [a] [noncitizen] enters the country, the legal circumstance changes, for the Due Process Clause applies to all ‘persons’ within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent.”). The Petition is therefore granted, and Felipe-Hernandez shall be immediately released. *See, e.g., Munaf v. Geren*, 553 U.S. 674, 693 (2008) (“The typical remedy for [unlawful executive] detention is, of course, release.”).

It is hereby ordered:

1. Respondents must immediately release Felipe-Hernandez from custody (within forty-eight hours of this Order’s filing).
2. Upon Felipe-Hernandez’s release, Respondents must return all his property, including any identification and immigration documentation, that was in his possession when he was detained.

It is so ordered.

UNITED STATES DISTRICT JUDGE
MATTHEW L. GARCIA